## RICHARD R. CLEMENCE *vs.* LILLIS STEERE.

Converting meadow-land into pasture-land is not waste, unless the change is detrimental to the inheritance, or contrary to the ordinary course of good husbandry.

Suffering pastures to be overgrown with brush is waste in cases where it would not be suffered by a man of ordinary prudence.

Cutting and selling wood off the farm is waste ; but the reversioner cannot claim a forfeiture on this account, if he has assented to it either before or after the cutting.

Cutting hoop-poles is waste unless it is the ordinary mode of managing the farm.

If the life-tenant receives a house in such a state that it is not reparable, he is not bound to repair it; but it is waste if he tears down such a house, and he is responsible even if the house is torn down after he has left the premises and without his consent.

The removal of a building, built by the life tenant and not affixed to the freehold, is not waste.

It is no waste to tear down a barn so dilapidated that there is danger that it will fall upon the cattle.

THIS was an action of waste against the defendant as tenant for life of an estate, under the will of Wright C.

Richard R. Clemence *vs.* Lillis Steere.

Steere, for cutting the timber and wood, more than was necessary for fuel and repairs, and hoop-poles, and selling them off the farm, and for changing meadow land into pasture land, for destroying the fixtures, suffering the buildings to go to decay, pulling them down and converting them to her own use, and suffering the pasture to become overgrown with bushes. The plaintiff claims as reversioner under a conveyance from Stephen Young, devisee of the reversion under the will of Wright C. Steere. The will, after giving to the defendant and her husband, since deceased, during their natural lives all the rents and profits of the real estate of the devisor for their support, devises to Stephen Young all the real and personal estate, subject to the payment of debts and funeral expenses, and also to the support of the defendant, in case the rents and profits should be insufficient ; and, in case the said Young should refuse to provide for them at his expense, directs the executor to sell the real estate, or so much thereof as shall be sufficient to support them comfortably during their natural lives. The plaintiff was executor of the will and a near relative of the defendant.

There was much contradiction in the proof in regard to the condition of the buildings at the time they came into the defendant's possession ; some of the witnesses stating them to be in an irreparable state of decay, and others representing them to be old but capable of being preserved in a tenantable condition. The charges in the declaration were proved for the most part, but there was much evidence tending to prove that the acts were done with the permission, either implied or expressed, of the plaintiff.

BROWNE, for the plaintiff.

CARPENTER, for the defendant.

Richard R. Clemence *vs.* Lillis Steere.

The charge of the court was delivered by Greene, C. J.

This is an unusual form of action in our Courts ; but it is an action well known to the law and established in our State by statute nearly two centuries ago. And it is a wise provision ; for unless there were some such remedy provided, the owner of the reversion, having no right to enter upon the premises, would be left at the mercy of the tenant for life. Although very stringent, causing a forfeiture of the estate wasted, it was designed to promote good husbandry, and should be fairly and reasonably enforced. You are, therefore, to entertain no prejudices on account of the nature of the suit nor on account of the relations of the parties. They should stand before you, divested of everything calculated to move either sympathy or prejudice.

The question for you is, has waste been committed in any or all the ways in which it has been charged ? I will go over the charges separately.

The defendant is charged with having converted meadow land into pasture land. In England this would be waste. But we are not to apply the English law too strictly. Our lands are in many respects cultivated differently from land in England ; and this difference is to be taken into account. Here it is necessary to show that the change is detrimental to the inheritance and contrary to the ordinary course of good husbandry. If in this case the change injured the farm, or was such a change as no good farmer would make, it was waste. (Greenl. Cruise Tit. III. ch. 11. s. 18. 3 Dane's Abr. ch. 78 art. 5. Harrow School v. Alderton. 2 B. & P. 86.)

It is said that the pastures have been permitted to become overgrown with brush. In England that would be waste, but you would not expect so high a state of

cultivation in Burrillville as in England, or as in the vicinity of a populous city. There must be such neglect in cutting the brush as a man of ordinary prudence would not permit ; and if there was in this case such neglect, it is waste.

Another item is the cutting and selling off the farm fifteen cords of wood. The tenant for life has a right to cut only so much wood as is necessary for fuel and repairs. Therefore to cut wood and sell it off the farm is waste beyond a doubt. The defence set up is that the plaintiff assented to it. If he has assented, either before or after the cutting, he has no right to claim a forfeiture of the estate on that account. You will consider in connexion with this point the relations sustained by the parties. This estate was charged with the comfortable support of the defendant. As owner of the reversion, the plaintiff is bound to provide for her, and as executor, the will obliges him to sell the estate for her maintenance if necessary. Now if the sale of the wood went for the support, and so relieved the estate of the charge for her support, this is a fact for you to consider in connexion with other facts bearing upon the question of his assent.

Another charge is cutting hoop-poles. Hoop-poles are timber trees in the earlier stages of their growth. This would be waste, unless it is the ordinary mode of managing the farm. It may be as usual for tenants to cut hoop-poles, when of the proper size, as to harvest the potatoes or fruit ; and it would be wrong to make that waste, which would not be waste in an ordinary tenant for a term of years. (Greenl. Cruise Tit. III. ch. 11. s. 5, and note. IV Kent, 76, 77.)

Then there is a charge not only for not repairing the

house, but also for tearing it down. Now in regard to the question of repairs, if the life-tenant receives a house in such a state as not to be reparable, or so dilapidated that the expense of repairing would be beyond the value of the house, he is not bound to repair, and may leave it to its natural destruction. But if the house is such that repairs would make it tenantable, he is bound to make them. But in regard to the charge of tearing the house down, the fact that it was not tenantable is no excuse. Whatever may have been its value, the reversioner had a right to it. If he consented to the demolition, that indeed alters the case; and you are to look to all the circumstances of the transaction and the parties for the evidence of the consent. If the house was torn down after she left the premises, and neither by her direction nor permission, she is responsible. (Greenl. Cruise Tit. III, ch. 11. s. 21. s. 30. IV Kent 77. Fay vs. Brewer, 3 Pick. 203.)

She is charged with removing the crib. The defence is that it did not belong to the inheritance, that it was placed by the life tenant upon a rock and not affixed to the freehold. If this was the case it is not waste. She is charged with tearing down the barn. This is an important part of the farm. The defence set up is that it was so old and unstable that she feared it would fall upon her cow. If there was any such danger she had a right to tear it down, unless its dilapidated condition resulted from her neglect to repair. There are also charges of tearing boards from the buildings and destroying the fences, which if proved amount to waste.

You will perceive that there are various portions claimed to be wasted. Waste in any particular place forfeits the place, as waste in the woods forfeits the woods, in

the meadow forfeits the meadow. A destruction of the dwelling house forfeits the whole place. You are to find the place forfeited where the waste.was committed. And, in addition, you are also to assess the damages for the place wasted, over and above the value of the place.

Verdict for the plaintiff in that there has been waste of hoop-poles in the pasture with damages in the sum of $25.